UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Nautilus Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Cortland Management, LLC,<br><br>Defendant. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT**

Plaintiff, Nautilus Insurance Company ("***Plaintiff***" or "***Nautilus***"), by and through its attorneys and upon information and belief, alleges as follows:

**NATURE OF ACTION**

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202 to determine the rights and duties, if any, of Plaintiff, and owed to Plaintiff, as set forth more fully below. Such relief is requested due to the existence of an actual controversy between the parties, as set forth more fully below. Plaintiff contends no allegations against Defendant, Cortland Management, LLC ("***Defendant***" or "***Courtland***"), in a lawsuit originally filed in

the Superior Court of Mecklenberg County, North Carolina, and which is now pending before the United States District Court for the Western District of North Carolina, Charlotte Division, Case No. 3:19-CV-0071 (the "***Lockerby Action***"), fall within the scope of coverage provided by a policy issued by Nautilus to Defendant and that there is no defense or indemnity obligation by Plaintiff towards Defendant.  Consequently, Nautilus is entitled to be reimbursed by Defendant for defense costs and fees Plaintiff previously advanced with respect to the Lockerby Action.  Depending on the declarations made by this Court, Plaintiff also seeks damages and/or an award of reimbursement of funds advanced on behalf of Defendant, as more fully set forth below.

## PARTIES

2. Plaintiff Nautilus is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Arizona, with its principal place of business located in Scottsdale, Arizona.

3. Upon information and belief, Defendant Cortland is a Georgia Limited Liability Company, duly authorized to conduct business in Georgia, and whose members are all considered to be residents of Georgia for jurisdictional purposes.  Cortland is an insured under the contract of insurance issued to Cortland by Plaintiff.

## JURISDICTION AND VENUE

4. The United States District Court for the Northern District of Georgia has jurisdiction pursuant to 28 U.S.C. §1332. There is complete diversity between the parties, and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

5. Defendant is subject to the personal jurisdiction of this Court and venue is proper in this District pursuant to 28 U.S.C. §1391(b) and Local Rule 3.1(B)(3), as a substantial part of the events giving rise to the dispute occurred herein, including that the contract of insurance that is the subject of this action was applied for, negotiated, to be performed in, and delivered in Fulton County, Georgia.

## FACTS

6. Nautilus issued a claims made and reported Real Estate Services Professional Liability Insurance Policy No. REA9029703-0219 to Cortland, which was in effect from February 1, 2019 to February 1, 2020 (the "Policy"). A true and correct certified copy of the Policy is attached hereto as Exhibit "A" and is incorporated herein as though it was set forth in full herein.

7. The Policy, which includes errors and omissions coverage, was delivered to Cortland in Atlanta, Georgia.

8.   The relevant portions of the Policy with respect to underlying complaint and the issues raised in this Complaint are set forth below.

9.   The Insuring Agreement for Coverage part A of the Policy, defines Nautilus' duty to defend and duty to indemnify as follows:

> **A.   Professional, Cyber, and Media and Personal Injury Liability Insurance Coverage**
>
> The **Company** agrees to pay on behalf of the **Insured** all sums in excess of the Deductible, up to the Limit of Liability, that the **Insured** shall become legally obligated to pay as **Damages** and **Claim Expenses** arising from a **Claim** that is both first made against the **Insured** and reported in writing to the **Company** in accordance with section V. A. of this **Policy**, provided that:
>
> 1.   the **Claim** arises out of a **Wrongful Act**; and
>
> 2.   no **Insured** gave notice to a **Prior Insurer** of such **Claim** or a **Related Claim** or any such **Wrongful Act** or **Related Wrongful Act**; and
>
> 3.   prior to the date an **Insured** first becomes an **Insured** under this **Policy,** or became an **Insured** under the first policy issued to the **Named Insured** by the **Company** (or its subsidiary or affiliated insurers), and such insurance coverage has been continuously maintained with the **Company** (or its subsidiary or affiliated insurers) until the effective date of this **Policy**, whichever is earlier, no **Executive Officer** had a basis to believe that any **Wrongful Act**, or **Related Wrongful Act**, might reasonably be expected to be the basis of a **Claim**; and
>
> 4.   such **Wrongful Act** happened on or after the **Retroactive Date** and before the end of the **Policy Period**.

Ex. A.

10. The Policy contains the following relevant definitions:

**K.** **Damages** means judgments (including pre-judgment or post-judgment interest), awards and settlements, provided all settlements are negotiated with the assistance and approval of the **Company**. **Damages** also includes punitive and exemplary damages, and the multiple portions thereof, to the extent that such damages are insurable under the law of the most favorable applicable jurisdiction. **Damages** do not include:

1. fees, costs and expenses paid or incurred or charged by any **Insured** or the return or reimbursement of fees, costs or expenses paid to the **Insured**; no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing; or

2. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule; or

3. injunctive or declaratory relief and costs to comply with injunctive relief; or

4. any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order; or

5. salaries, wages, overhead or benefit expenses associated with any **Insured** or any person whose act, error or omission the **Insured** is legally responsible.

\*\*\*

**HH.** **Professional Services** means the following services performed by the **Insured** for others, including such services that are performed electronically using the Internet or a network of two or more computers:

> 1. services as a real estate agent, real estate broker, real estate personal assistant, real estate leasing agent, real estate appraiser, auctioneer of real property, property manager or notary public, provided that the **Insured**, if required, is appropriately licensed by the state in which the **Insured** is doing business at the time the **Wrongful Act** is committed; and
>
> 2. services as an expert witness, real estate consultant or real estate counselor, provided such services are limited to the areas specified in paragraph 1. of this definition; and
>
> 3. services as a member of a formal real estate accreditation, standards review or similar real estate board or committee; and
>
> 4. any other services stated in Item 7. of the Declarations or by written endorsement to this **Policy**.
>
> \*\*\*
>
> **JJ.  Real Estate Services Wrongful Act** means any actual or alleged act, error or omission committed by any **Insured** or by any person whose act, error or omission the **Insured** is legally responsible, arising solely from the performance of, or failure to perform, the **Insured's Professional Services**.
>
> \*\*\*
>
> **PP.  Wrongful Act** means any **Real Estate Services Wrongful Act**, **Cyber Wrongful Act** or **Media and Personal Injury Wrongful Act**.

Ex. A.

11. The Policy also contains the following exclusion:

> This **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim**:
>
> A. based on or arising out of:

\*\*\*

    2.    the gaining by the **Insured** of any personal profit, gain or financial advantage to which the **Insured** is not legally entitled; [. . .]

Ex. A.

12. On July 30, 2019, Mishelle Lozano Lockerby and a number of putative class members ("***Lockerby and the Class***") filed their Original Complaint entitled *Lockerby v. Cross Point NC Partners, LLC d/b/a Sardis Place at Matthews and Cortland Partners, LLC* against Cortland and co-defendant Cross Point in North Carolina Superior Court for the County of Mecklenburg, Case No. 19-CVS-15302. A true copy of the Original Complaint is attached as Exhibit "B" and is incorporated herein as though set forth in full.  On November 12, 2019, Lockerby filed her Amended Complaint, which is the operative complaint in the action.  A true copy of the Amended Complaint is attached as Exhibit "C" and is incorporated herein as though set forth in full.  The Action was removed on December 31, 2019 and is currently pending before the United States District Court for the Western District of North Carolina, Charlotte Division, Case No. 3:19-CV-00717.

13. Lockerby and the Class are seeking damages resulting from Cortland's creation and enforcement of policies and procedures contained in the parties' lease agreements ("***Collection Policy***"), which purport to provide Cortland

the right to assess and collect certain eviction-related fees from tenants, including filing fees charged by the court for filing a complaint for summary ejectment, sheriff service fees for serving a complaint for summary ejectment, and attorneys' fees paid solely to evict tenants (collectively, referred to as "***Eviction Fees***").

14. It is alleged that, pursuant to its Collection Policy, Cortland required tenants to pay Eviction Fees if they failed to make a full and complete rental payment or maintain a certain balance on their account ledger on approximately the 10th day of a given month. In addition to assessing a 5% late charge, Cortland automatically assessed the Eviction Fees (which ranged from $186 to $206) against tenants who failed to make timely rent payments.

15. Cortland allegedly posted the Eviction Fees to tenants' ledgers before Cortland had paid any out-of-pocket expenses. Specifically, at the time the Eviction Fees were entered into the tenants' account ledger as immediately due and owing, Cortland allegedly had not actually filed or served a complaint against the tenants, had not been charged any filing fees by a court, and did not incur attorneys' fees or other expenses for services of process.

16. It is further alleged that after causing the Eviction Fees to be assessed against the tenants' account ledgers, and with no guarantee that such amounts will ever be awarded by a North Carolina court, Cortland immediately began

attempting to collect upon the balance on the account ledgers pursuant to its Collection Policy. Plaintiff Lockerby alleges she paid these Eviction Fees to Cortland when they were not owed.  It is also alleged that after the Eviction Fees were entered onto Lockerby and the Class' account ledgers, there were no occasions where Defendants removed the Eviction Fees, or reconsidered whether such Eviction Fees were improperly assessed.

17. Additionally, Lockerby and the Class allege that after the Eviction Fees were entered onto a tenant's ledger, Cortland caused letters or emails ("**Collection Letters**") to be delivered to tenants stating that Eviction Fees were due and owing.  Lockerby and the Class allege that the Collection Letters misrepresented the status of purported legal action against tenants.

18. The Amended Complaint asserts claims for: (1) Violation of the North Carolina Residential Rental Agreements Act, N.C.G.S. §§42-46; (2) Violation of the North Carolina Debt Collection Act, N.C.G.S. §§75-50; (3) Violation of the North Carolina Unfair and Deceptive Trade Practices Act; (4) Declaratory Judgment; and (5) Negligent Misrepresentation. The Amended Complaint seeks the following forms of relief: declaratory judgment that the parties' residential leases are contrary to N.C.G.S. sections 42-46 and therefore void and unenforceable as against public policy; an injunction generally preventing Cortland

from collecting Attorneys' Fees from Lockerby and the Class; an award of damages pursuant to N.C.G.S. section 75; trebled damages, actual and compensatory damages, punitive damages; and attorneys' fees, *inter alia*.

19. By a letter dated December 23, 2019, Nautilus informed Cortland that it would provide Cortland with a defense of the Lockerby Action, while reserving all rights. A true and correct copy of that letter is attached hereto as Exhibit "D".

20. By a letter dated January 26, 2021, Nautilus provided Cortland with an updated reservation of rights letter, notifying Courtland that Nautilus would continue to defend Cortland, while reserving all rights, including the right to reclaim amounts paid as defense expenses for any amounts that are not reasonable or that can be attributed to liability that is not potentially covered. A true and correct copy of that letter is attached hereto as Exhibit "E".

## COUNT I
### Declaratory Relief – No Duty To Defend The Amended Complaint In The Lockerby Action Under The Policy As A Matter Of Law

21. Nautilus refers to and incorporates herein by reference paragraphs 1 through 20, inclusive as though set forth in full herein.

22. Nautilus contends that the Amended Complaint in the Lockerby Action does not obligate it to provide a defense to Cortland under the Policy because the amounts sought do not constitute covered Damages under the Policy.

As such, the claims asserted in the Amended Complaint do not trigger coverage under the Insuring Agreement for Coverage part A of the Policy.

23.     Additionally, Nautilus contends that the Amended Complaint in the Lockerby Action does not obligate it to provide a defense to Cortland under the Policy because any potential coverage for the alleged "wrongful act" arising out the alleged assessment and collection of the Eviction Fees from tenants is barred under Exclusion A.2. to the Policy, which provides "[t]his **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim**: **A.** based on or arising out of . . . the gaining by the **Insured** of any personal profit, gain or financial advantage to which the **Insured** is not legally entitled[.]"  Ex. A.

24.     An actual controversy exists between Nautilus and Cortland that involves the rights and obligations of Nautilus under the Policy with respect to this issue of law as to any past, present, or continuing duty to defend the Lockerby Action under the Policy.  This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits.

25.     Nautilus desires a judicial determination of its rights and duties with respect to Nautilus' duty, if any, to defend against the Amended Complaint in the Lockerby Action.  Specifically, Nautilus desires a general declaration that under the

Policy: (a) Nautilus never had a duty to defend the Amended Complaint in the Lockerby Action; (b) Nautilus has no continuing duty to defend the Amended Complaint in the Lockerby Action; (c) Nautilus is entitled to withdraw from the defense of the Amended Complaint in the Lockerby Action; and (d) Nautilus is entitled to reimbursement from Cortland of defense costs advanced in the Amended Complaint in the Lockerby Action.  Nautilus also seeks a specific declaration as to each issue identified above.

## COUNT II
### Declaratory Relief – No Duty To Defend The Original Complaint In The Lockerby Action Under The Policy As A Matter Of Law

26.     Nautilus refers to and incorporates herein by reference paragraphs 1 through 20, inclusive as though set forth in full herein.

27.     Nautilus contends that the Original Complaint in the Lockerby Action does not obligate it to provide a defense to Cortland under the Policy because the amounts sought do not constitute Damages under Policy.  As such, the claims asserted in the Original Complaint do not trigger coverage under the Insuring Agreement for Coverage part A of the Policy.

28.     Additionally, Nautilus contends that the Original Complaint in the Lockerby Action does not obligate it to provide a defense to Cortland under the Policy because any potential coverage for the alleged "wrongful act" arising out

the alleged assessment and collection of the Eviction Fees from tenants is barred under Exclusion A.2. to the Policy, which provides "[t]his **Policy** does not apply to any **Claim Expenses** or **Damages** in connection with any **Claim**: **A.** based on or arising out of . . . the gaining by the **Insured** of any personal profit, gain or financial advantage to which the **Insured** is not legally entitled[.]"  Ex. A.

29. An actual controversy exists between Nautilus and Cortland that involves the rights and obligations of Nautilus under the Policy with respect to this issue of law as to any past, present, or continuing duty to defend the Lockerby Action under the Policy.  This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits.

30. Nautilus desires a judicial determination of its rights and duties with respect to Nautilus' duty, if any, to defend against the Original Complaint in the Lockerby Action.  Specifically, Nautilus desires a general declaration that under the Policy: (a) Nautilus never had a duty to defend the Original Complaint in the Lockerby Action; (b) Nautilus has no continuing duty to defend the Original Complaint in the Lockerby Action; (c) Nautilus is entitled to withdraw from the defense of the Original Complaint in the Lockerby Action; and (d) Nautilus is entitled to reimbursement from Cortland of defense costs advanced in the Original

Complaint in the Lockerby Action. Nautilus also seeks a specific declaration as to each issue identified above.

## COUNT III
### Declaratory Relief – No Duty To Indemnify Against The Lockerby Action Under The Policy As A Matter Of Law

31. Nautilus refers to and incorporates herein by reference paragraphs 1 through 20, inclusive as though set forth in full herein.

32. Nautilus contends that, as a matter of law, it is not obligated to indemnify Cortland for any liability imposed in the Lockerby Action under the Policy.

33. An actual controversy exists between Nautilus and Cortland that involves the rights and obligations of Nautilus under the Policy with respect to indemnity coverage as a matter of law for liability alleged in the Lockerby Action under the Policy. This controversy is within the jurisdiction of this Court and can be resolved by a declaratory judgment of this Court and without the involvement of other suits. The purely legal issues barring the duty to indemnify include, but are not limited to, Nautilus' contention that:

   a. the claims asserted do not trigger coverage under the Insuring Agreement for Coverage part A of the Policy, because the amounts sought do not constitute Damages under the Policy; and

    b.  Exclusion A.2., which bars coverage for any Claim "based on or arising out of . . . the gaining by the Insured of any personal profit, gain or financial advantage to which the Insured is not legally entitled", negates coverage in this instance. Ex. A.

34.    Nautilus desires a judicial determination of its rights and duties with respect to whether Nautilus has no duty to indemnify as a matter of law as to the Lockerby Action under the Policy. Specifically, Nautilus desires a general declaration that it is not obligated to indemnify Cortland under the Policy with respect to the Lockerby Action, and a specific declaration as to each issue identified above.

## COUNT IV
### For Money Paid Against Cortland

35.    Nautilus refers to and incorporates herein by reference paragraphs 1 through 20, inclusive as though set forth in full herein.

36.    If this Court determines that Nautilus had or has no duty to defend or indemnify Cortland, in whole or in part, with respect to the Lockerby Action, then Cortland is obligated to reimburse and return to Nautilus and otherwise reimburse Nautilus for those sums paid for defenses costs and expenses relating to the defense of Cortland for the Lockerby Action in addition to any amount in indemnity paid.

37.     Nautilus has paid and continues to pay amounts for defenses costs and expenses relating to the defense of Cortland for the Lockerby Action and may in the future be forced to pay indemnity costs, and those payments make Cortland indebted to Nautilus.

38.     None of the sums paid with respect to the Lockerby Action have been reimbursed to Nautilus by Cortland.

## **PRAYER**

WHEREFORE, Nautilus prays for judgment as follows:

1.     That this Court determine and adjudicate the rights, duties and obligations of the parties with respect to potential and actual coverage for the Original Complaint and the Amended Complaint under the policy of insurance described in this Complaint and set out in the attached Exhibits.

2.     On the First Claim for Relief:

   a.   Nautilus never had a duty to defend Cortland against the Amended Complaint in the Lockerby Action under the Policy;

   b.   Nautilus has no continuing duty to defend Cortland against the Amended Complaint in the Lockerby Action under the Policy;

   c.   Nautilus is entitled to withdraw from the defense of Cortland against the Amended Complaint in the Lockerby Action under the Policy; and

   d.   Nautilus is entitled to reimbursement from Cortland of defense costs advanced in the Amended Complaint in the Lockerby Action under the Policy.

3.  On the Second Claim for Relief:

    a.  Nautilus never had a duty to defend Cortland against the Original Complaint in the Lockerby Action under the Policy;

    b.  Nautilus has no continuing duty to defend Cortland against the Original Complaint in the Lockerby Action under the Policy;

    c.  Nautilus is entitled to withdraw from the defense of Cortland against the Original Complaint in the Lockerby Action under the Policy; and

    d.  Nautilus is entitled to reimbursement from Cortland of defense costs advanced in the Original Complaint in the Lockerby Action under the Policy.

4.  On the Third Claim for Relief:

    a.  For a judicial declaration that Nautilus is not obligated to indemnify Cortland under the Policy for some or all liability alleged in the Lockerby Action;

    b.  For a judicial declaration on each of the coverage issues raised in this action under the Policy;

5.  On the Fourth Claim for Relief:

    a.  For reimbursement from Cortland of all or a portion of defense costs and expenses for reasonable attorney's fees, costs and expenses for the Lockerby Action;

    b.  For reimbursement from Cortland of all or a portion of any amounts paid in indemnifying Cortland with respect to the Lockerby Action;

6.  On Each Claim for Relief:

a. For attorneys' fees, expenses and costs of suit incurred herein; and

b. For such other and further relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 29, 2021

DUANE MORRIS LLP

/s/ Kenneth B. Franklin
Kenneth B. Franklin
Georgia Bar No. 005773
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309-3929
Tel: (404) 253-6900
Fax: (404) 253-6901
*KBFranklin@duanemorris.com*

Max H. Stern (*pro hac vice application to be submitted*)
Holden Benon (*pro hac vice application to be submitted*)
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Tel.: (415) 957 3000
Fax: (415) 957 3001
*MHStern@duanemorris.com*
*HBenon@duanemorris.com*

*Counsel for Plaintiff, Nautilus Insurance Company*